IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AEROPLATE CORPORATION, a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> ARCH INSURANCE COMPANY, a Missouri corporation, and DOES 1 through 20, inclusive, <br><br> Defendants. | CV F 06-1099  AWI SMS <br><br> MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND RELATED ORDERS <br><br> Documents # 10, #15, and # 33 |

## INTRODUCTION

This is an action in diversity by Plaintiff Aeroplate Corp., a California corporation ("Aeroplate") for damages for negligent and intentional interference with economic advantage against defendant Arch Insurance Company ("Arch"), a Missouri corporation.  Arch characterizes the action as being a strategic lawsuit against public participation ( "SLAPP suit").  In the instant motion, Arch moves to strike Aeroplate's action pursuant to section 425.16 of the California Code of Civil Procedure (hereinafter "section 425.16" or "anti-SLAPP motion").  Diversity jurisdiction exists pursuant to 28 U.S.C., section 1332.  Venue is proper in this court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Aeroplate's complaint alleges that on or about April 26, 2005, the Fresno Air National

Guard Station ("FANGS") issued a solicitation requesting offerors submit sealed bids to Repair/Construct Maintenance Hangar and Shops at the Fresno Air National Guard Station in Fresno, California (the "Project"). The officer at FANGS that was ultimately responsible for awarding the contract on the project was a Lt. Col. Eric McDonald. The contract manager and person responsible for examination of the bids and for investigation and determination of bid responsiveness and contractor responsibility was Warrant Officer Mike Mitchell.

Aeroplate timely submitted its offer and was one of five offerors to bid the project. At the opening of bids, it appeared Aeroplate was the lowest cost, responsive, responsible bidder. Under the terms of the bid solicitation, the contract for the Project should have been awarded to Aeroplate.

Aeroplate alleges that a responsibility review of Aeroplate conducted about three weeks after the opening of the bids determined that Aeroplate's bid was responsive and that Aeroplate was a responsible contractor. Aeroplate alleges that thereafter, Arch engaged in a number of communications with the contracting authority with FANGS wherein a number of false and misleading statements were made by Arch. Aeroplate contends that, as a result of the alleged false and misleading statements, the relationship between Aeroplate and FANGS was severely interfered with to the extent the contract for the Project was awarded to the second low bidder. Aeroplate's complaint does not detail specific communications that were made or their content.

The award of the contract for the Project to the second low bidder prompted Aeroplate to file suit in the United States Court of Federal Claims. On August 5, 2005, the Federal Claims Court filed its decision in Aeroplate Corp. v. United States, 67 Fed.Cl. 4 (2005) (hereinafter "Aeroplate I"). That decision granted Aeroplate's motion to restrain any further action by FANGS to make a final award of contract for the Project pending a final determination of Aeroplate's responsibility. Of significance to this opinion, the court in Aeroplate I set forth the factual context for FANGS' amended determination that Aeroplate's

bid was not responsive and that Aeroplate was not a responsible bidder. This court judicially notices the decision in Aeroplate I and relies on the factual presentation in that opinion to establish the following facts that are significant in this case.

Aeroplate's total bid for the project was $7.3 million, including approximately $6.5 million for the base performance and an additional $800,000 for options. During the initial determination of responsiveness of the bids, Mitchell noticed that Aeroplate's bid lacked the corporate seal of the company. This prompted some communication between Mitchell and legal staff and brought Aeroplate's bid to particular attention during the responsibility determination. Mitchell's responsibility determination initially revealed that Aeroplate had a low income level, low credit capacity, and a bonding capacity that was below what the Project required. Mitchell contacted a representative of Willis Risk & Insurance Co. ("Willis") the authorized agent for Arch. Mitchell eventually determined Aeroplate was responsible after communication with Willis indicated that Willis had agreed to provide a surety bond of up to $7.3 million for Aeroplate's bid. On or about June 15, 2005, Mitchell issued a Determination of Responsibility in favor of Aeroplate and recommended award of the Project contract to Aeroplate.

The court's decision in Aeroplate I summarizes as follows the events that transpired between the June 15 issuance of the determination of responsibility favoring Aeroplate and June 29, 2005, when Mitchell amended the Determination of Responsibility, finding Aeroplate not responsible and recommending the offer of contract to Aeroplate be withdrawn:

> Subsequent to the apparent close of Contract Administrator Mitchell's investigation, new events transpired that led to his June 29, 2005 revised Determination of Responsibility, wherein he retracted his previous approval and recommended against award. According to the June 29 memorandum, Mr. Mitchell received a voicemail message on June 20 from Ken Huff at Arch Insurance "informing us Aeroplate submitted an invalid bid bond." Mr. Mitchell followed up on what defendant emphasizes was an "unsolicited" phone call [citation to defendant's brief] by speaking with Arch Insurance's "Senior Surety Counsel," Susan Neff. Mr. Mitchell's June 15 memorandum states that Ms. Neff informed him that Arch Insurance authorized the bid bond to cover no more than $5.5 million. According to his memorandum, Ms. Neff explained that Arch Insurance found out a week prior that [Aeroplate's] bid

was actually $ 7.3 million and that Arch Insurance "instructed [Aeroplate] to withdraw its bid," but that [Aeroplate] refused and instead asked Arch Insurance to evaluate [Aeroplate's] finances to determine if [Aeroplate] could qualify for the higher amount. A handwritten "Phonecon Record" by Mr. Mitchell dated June 21, 2005, indicates that Ms. Neff informed him that Arch was "unlikely to underwrite bonds."

Aeroplate I 67 Fed.Cl. at 9.

The factual summary in Aeroplate I summarizes two additional telephone calls between Mitchell and Ms. Neff on June 22 and June 23, 2005, that indicate that Arch told Mitchell that Arch would not provide surety for the bond in the amount required even if the contract were awarded to Aeroplate.

The present action by Aeroplate against Arch was removed to this court from Fresno County Superior Court on August 18, 2006. Arch filed its motion to dismiss or, in the alternative, for summary judgment on August 23, 2006. An amended motion was filed the following day. Aeroplate's opposition was filed on September 25, 2009, and Arch filed its reply on October 2, 2006. The hearing date, which had been continued, was scheduled for October 10, 2006. That hearing date was vacated by order of the court on October 4, 2006, and again by amended order on October 10, 2006. Aeroplate filed a motion for leave to conduct discovery on October 5, 2006. Arch's opposition to the motion for leave to conduct discovery was filed on October 9, 2006. The hearing on Aeroplate's motion for leave to conduct discovery is currently set for November 13, 2006.

## LEGAL STANDARD

Section 425.16, subdivision (a) of the California Code of Civil Procedure (hereinafter "section 425.16) states its purpose as follows:

> The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

Suits that aim to chill constitutional rights of freedom of speech have been dubbed

4

"strategic lawsuit against public participation" or "SLAPP suits."  Section 425.16 is therefore referred to as California's anti-SLAPP statute.  To protect the public's interest in participation in matters of public significance, section 425.16, subdivision (b) provides:

> (b)(1)  A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Thus, in promulgating section 425.16, the California legislature provided that a "special motion to strike may be brought early in the lawsuit and that discovery ordinarily may not proceed unless and until the court finds that the [plaintiff's] suit has a probability of success."  Rodgers v. Home Shopping Network, Inc. 57 F.Supp.2d 973, 976 (C.D. Cal. 1999) ("Rodgers").

To facilitate early resolution of the lawsuit, section 425.16 provides:

> (f)  The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper.  The motion shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.
>
> (g)  All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section.  The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion.  The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

The Ninth Circuit, recognizing that section 425.16 sets forth a rule of procedure, applied Erie R.R. v. Tompkins, 304 U.S. 64 (1938) to determine whether California's section 425.16 can be applied in federal court.  United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972 (9th Cir. 1999) ("Lockheed").  The Lockheed court determined that, because there was no direction collision between the Federal Rules of Civil Procedure[1] and section 425.16, subdivisions (b) (providing the availability of the special

---

[1]  All references to "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

5

motion to strike) and (c) (providing for attorney fees), those provisions are available to a defendant in federal court. Id. at 973; Four Navy SEALS v. Associated Press, 413 F.Supp.2d 1136, 1149 (S.D. Cal. 2005). The Lockeed court specifically did not address any of the other provisions of section 425.16, particularly of subdivisions (f) and (g). Lockheed, 190 F.3d at 972 n.11.

The Rodgers court observed:

> A special motion to strike can be based on any defect in the plaintiff's action. Thus, a special motion may be premised on legal deficiencies inherent in the plaintiff's claim, analogous to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). [Citation.] Or, a motion may assume that the plaintiff has stated a claim but assert that the plaintiff cannot support that claim with evidence, analogous to a motion for summary judgment under Federal Rule of Civil Procedure 56. [Citations].

Rogers, 57 F.Supp.2d at 976. The Rogers court recognized that, while the Ninth Circuit has specifically held there is no collision between Federal Rules and the provisions of subsections (b) and (c) of section 425.16, the provisions of subdivisions (f) and (g) that facilitate the early resolution of SLAPP suits in California courts come into direct conflict with Rule 56 where the anti-SLAPP motion pursuant to section 425.16 is directed at the *evidentiary support* for the plaintiff's claim. In such a case, the anti-SLAPP motion is analogous to a motion for summary judgment. Id. at 982. The Rogers court explained:

> Thus, § 425.16 and Rule 56(f) have different objectives. Section 425.16 was designed to allow a party defending a SLAPP action to resolve the matter as early as possible, before extensive discovery is permitted. Rule 56(f), however, was designed to ensure that a nonmoving party will not be forced to defend a summary judgment motion without having an opportunity to marshal supporting evidence. These divergent goals can produce directly conflicting outcomes.
>
> For example, California courts have denied discovery under § 425.16 because the defendant failed to specify "what additional facts he expects to uncover …." [Citation.] Federal courts, however, have "allowed parties with no clear idea of what specific facts they hope to obtain to overcome a summary-judgment motion, at least temporarily." [Citation]. These contradictory outcomes stem directly from the differences between § 425.16 and Rule 56(f): Section 425.16 limits discovery and makes further discovery an exception, rather than the rule. Rule 56 does not limit discovery. On the contrary, it ensures that adequate discovery will occur before summary judgment is considered.

Id. at 981 -982.

Where, as here, the process of discovery is not begun or is incomplete, the rule that emerges from Rogers is easily stated: (1) If the motion pursuant to section 425.16 challenges the legal sufficiency of the complaint, and does not require the consideration of facts that are produced through the discovery process, then the issue is decided under the standards applicable to a motion to dismiss pursuant to Rule 12(b)(6). Id. at 982-983.  (2) If the motion challenges the factual basis of the plaintiff's case, and relies on declarations and affidavits produced through the discovery process, then the application of Rule 56 may require the motion to strike pursuant to section 425.16 be denied as premature. Id. at 983.  As summarized by Rodgers:

> In sum, § 425.16 applies in federal court.  However, it cannot be used in a manner that conflicts with the Federal Rules.  This results in the following outcome: If a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6) except that the attorney's fee provision of § 425.16(c) applies.  If a defendant makes a special motion to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the same manner as a motion under Rule 56 except that again the attorney's fees provision of § 425.16(c) applies.

Id. at 983.

Here, the court is called upon to apply section 425.16 prior to the completion of the discovery process.  Therefore, pursuant to Rodgers, the court first applies the well known standards governing the dismissal of a complaint pursuant to Rule 12(b)(6).  A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  In considering a motion to

dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). In deciding a Rule 12(b)(6) motion, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

"As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.' [Citation.]" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). However, a district court may consider materials in a 12(b)(6) motion to dismiss that are not part of the pleadings but that are 'matters of public record' of which the court may take judicial notice pursuant to Federal Rule of Evidence 201. Id. Specifically, a district court may take judicial notice of public records related to legal proceedings in both state courts and in the district court. See Miles v. State of California, 320 F.3d 986, 987 (9th Cir. 2003) (district court taking judicial notice of related state court proceedings); Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1894) (district court takes notice of prior related proceedings in the same court).

**DISCUSSION**

Subdivision (b)(1) of section 425.16 describes a two-step, shifting-burden approach. First, the moving party must show that plaintiff's action arises from an act in furtherance of free speech. Four Navy SEALS, 413 F.Supp.2d at 1149. A statement is made in furtherance of free speech if it is "made in a public forum or in furtherance of the constitutional rights of petition or speech in connection with an issue of public interest. Condit v. Nat'l Enquirer, Inc., 248 F.Supp.2d 945, 953 (E.D. Cal. 2002). "Once this prima facie showing [of constitutionally protected speech] is made, the burden then shifts to the plaintiff to establish by a 'reasonable probability' that he or she will prevail on the claim and that the defendant's

8

'purported constitutional defenses are not applicable to the case as a matter of law or by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses.' [Citation]" Thomas v. Los Angeles Times Communications, LLC, 189 F.Supp.2d 1005, 1010 (C.D.Cal.,2002).

The court has examined the Arch's arguments and finds that, while the issue of whether the statements of Arch's employee, Neff, to FANGS' contract administrator, Mitchell, are statements made in furtherance of free speech is an issue that could possibly be resolved as a matter of law, the issue of whether Aeroplate has a possibility of success on the merits of its action is an issue of fact. Arch's argument that Aeroplate cannot prevail on its claims against Arch are supported by reference to evidence outside the record in the form of declarations, depositions and business records. Arch's argument with respect to Aeroplate's inability to prevail on its claims of intentional and negligent interference depend on the actual content of the interchange(s) between Neff and Mitchell, and on proof of the fact that the relationship between Aeroplate and FANGS has not been interfered with. The evidence offered to support both these arguments is evidence that may not be considered by the court on a motion to dismiss pursuant to Rule 12(b)(6) because it lies outside the record and because it is evidence that is not appropriate for judicial notice.

The court concludes that the arguments presented by Arch may not be considered in the context of a motion to dismiss pursuant to Rule 12(b)(6). Arch's motion to dismiss will therefore be denied.

The court next considers Aeroplate's motion in the alternative for summary judgment. Here, the first issue is Aeroplate's contention that the court should not decide the merits of Arch's anti-SLAPP motion until Aeroplate has had the opportunity to develop their evidentiary record through the discovery process. The discussion in Rogers makes it clear that the federal court's obligation to apply federal procedural standards in diversity actions puts those features of section 425.16 that provide for an early disposition of the case, namely the

discovery-limiting provisions of subdivisions (f) and (g) of section 425.16, at odds with the discovery-allowing aspects of Rule 56.  Rogers, 57 F.Supp.2d at 982.

Following the decision in Rodgers, the Ninth Circuit addressed the issue of whether subdivisions (f) and (g) of section 425.16 come into direct conflict with the discovery-allowing aspects of rule 56.  In Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832 (9 Cir. 2001), the court acknowledged that its prior decision in Lockheed had expressly limited its holding to subdivisions (b) and (c), the only provisions that were before the court in that case.  Id. at 845-846.  The Metabolife court noted that the supreme court has restated Rule 56(f) as "requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.' [Citation.]" Id. at 846 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986).  The Metabolife court agreed with the holding in Rodgers and restated that holding as follows:

> Section 425.16 limits discovery and makes further discovery an exception, rather than the rule.  Rule 56 does not limit discovery. On the contrary, it ensures that adequate discovery will occur before summary judgment is considered.  ¶ Because the discovery-limiting aspects of § 425.16 (f) and (g) collide with the discovery-allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court.

Metabolife, 264 F.3d at 846.

The logical consequence of the limitation imposed by Rogers and adopted by Metabolife on subdivisions (f) and (g) is that reliance on those provisions – which would permit limitation of discovery and early dismissal of the SLAP claims – is restricted in federal court to only those situations where the issues presented by the anti-SLAPP motion can be resolved purely as a matter of law without reference to declarations, affidavits and other materials that lie outside the record.  The Rogers court recognized that those anti-SLAPP suits that can be resolved purely as a matter of law represent a distinct minority of the suits filed in California courts.  See Rodgers. 57 F.Supp.2d at 981 ("Indeed, most of the California state court opinions addressing § 425.16 concern issues of fact rather than legal arguments").

10

District courts in California have shown some concern that the holding in Rodgers as adopted in Metabolife, if liberally applied, would deny defendants in SLAPP suits the intended benefit of section 425.16; that is, of limitation of discovery and early dismissal, in all but the most unusual cases. In Flores v. Emerich & Fike, 2006 WL 2536615 (E.D. Cal. 2006) ("Flores"), the district court reasoned:

> The only way to interpret Metabolife without eviscerating Lockheed is to apply it narrowly only to situation where a plaintiff asserts prior to decision on an anti-SLAPP motion that discovery might influence the outcome of the motion to strike.

Id. at *9.

In Flores, the primary issue before the court was whether leave should be granted to amend a complaint after the complaint had been struck pursuant to section 425.16 in a prior motion. Id. at *7-*10. The Flores court also dealt with a motion in the alternative pursuant to section 425.16 to strike claims in the amended complaint should the amended complaint be allowed. The court also granted that motion to strike, based primarily on the finding that the factual representations made by the plaintiff to support their claim of a likelihood of success on the merits of the amended complaint were essentially identical to the claims that had been made previously and rejected as insufficient. Id. at *10-*13.

In a similar vein, the district court in New.Net, Inc. v. Lavasoft, 356 F.Supp.2d 1090 (C.D. Cal. 2004), addressed the issue of whether the discovery-shortening features of section 425.16 collided with the discovery-permitting provisions of Rule 56. In New.Net, the motion to strike pursuant to section 425.16 arose in the context of an ongoing dispute in which the court had previously denied plaintiff's motion for injunctive relief and in which the factual background had already been developed to a significant extent. Id. at 1096-1098. Addressing specifically the issue of whether additional discovery should be allowed, the New.Net court placed the burden to show good cause why additional discovery should be allowed on the plaintiff opposing the anti-SLAPP motion. Id. at 1101-1102. Although it is not entirely clear

11

whether there had been significant prior discovery in New.Net, the procedural posture of that case suggests there had been. In any event, it is clear that shifting the burden to the opposing plaintiff to show why discovery should be allowed where there had been no prior discovery is definitely at odds with the court's analysis in Rodgers, and seems plainly at odds with the Metabolife court's holding approving the reasoning in Rodgers.

In a slightly different context, the court in Four Navy SEALS, recognized that subdivisions (f) and (g) of section 425.16 were not available where there were disputed facts that prevented dismissal pursuant to Rule 12(b)(6). The court nonetheless granted the motion to strike because the parties in that case "represented the facts as essentially uncontested and fully developed." Four Navy SEALS, 413 F.Supp.2d at 1136.

A general rule emerges from Metabolife, 264 F.3d at 846, and Rodgers, 57 F.Supp.2d at 982, which holds that the discovery-limiting provisions of section 425.16, subdivisions (f) and (g), collide with the discovery-permitting provisions of Rule 56, and therefore are not available in federal court unless either; (1) the factual basis of the case has been developed through discovery or similar prior proceedings to the extent a motion for summary judgment would be appropriate, Flores, 2006 WL 2536615 at *10-*13; or (2) the parties agree that further discovery is not necessary, Four Navy SEALS, 413 F.Supp.2d at 1136; or (3) the only issue presented by the motion is an issue of law and the motion is suitable for decision as a motion to dismiss pursuant to Rule 12(b)(6); Lockheed, 190 F.3d at 972.

The facts of this case are clearly distinguishable from those of Flores, New.Net, and Four Navy SEALS, in that this action and the parties are new to this court and there is no information before the court to indicate there has been significant discovery to this point. It is clear to the court that Arch is not entitled to dismissal of Aeroplate's complaint pursuant to Rule 12(b)(6), a fact Arch appears to recognize in their extensive alternative argument for consideration of their motion pursuant to Rule 56.

Arch argues vigorously that Aeroplate's request to stay the motion and conduct

12

discovery should be denied because Aeroplate has failed to state with particularity what evidence it intends to make available through discovery or even to aver that such evidence exists. Arch cites this court's decision in United States v. Simmons, 1998 U.S. Dist. LEXIS, p. 10 (E.D. Cal. 1998) for the proposition that the party opposing a motion for summary judgment has the burden pursuant to Rule 56(f) to "show how additional discovery would preclude the court from granting partial summary judgment . . . ." Id.

Arch's argument fails to recognize the distinction between *additional* or *further* discovery, on one hand, or *any* discovery on the other. While the standard proposed by Arch would be proper if there had already been significant discovery in this case, the Supreme Court's holding in Liberty Lobby makes it clear that, where there has been no discovery, the court is required to grant the request of the nonmoving party to stay or continue the motion for summary judgment to allow for discovery. See Liberty Lobby, 477 U.S. at 250 n.5.

The court concludes that where, as here, the nonmoving party has not had (so far as the court is aware) any opportunity for discovery, and where there has been a motion for leave to conduct discovery, the court is without discretion to deny the requested opportunity. The court is aware that the result obtained in this case is substantially different than would have been the case had the provisions of subdivisions (f) and (g) of section 425.16 been applicable in federal court.

While the collision between the discovery-limiting provisions of section 425.16 and the discovery-allowing provisions of Rule 56 means that a substantial part of the intended purpose of the anti-SLAPP statute will be unrealized in federal courts in most cases, the attorney fees provision of subdivision (c) is not invalidated and provides a substantial benefit to the party challenging the SLAPP suit, even though discovery may be required. Thus, it remains in the interests of the moving party to continue to look to section 425.16 as a basis for summary judgment because the prospect of recovery of attorney fees from a party that files a meritless SLAPP suit remains a significant disincentive against the filing of such lawsuits.

THEREFORE, in consideration of the foregoing discussion, it is hereby ORDERED that Arch's motion to dismiss is DENIED with prejudice. Arch's motion in the alternative for summary judgment is premature and is therefore STAYED pending completion of discovery. Aeroplate's motion to conduct discovery is GRANTED. This matter is referred to the magistrate judge for re-setting of the scheduling conference and further orders as appropriate. The hearing date of November 13, 2006, for oral argument on Aeroplate's motion for leave to conduct discovery is hereby VACATED, and no party shall appear at that time.

IT IS SO ORDERED.

**Dated:   November 8, 2006**                              **/s/ Anthony W. Ishii**
0m8i78                                                    UNITED STATES DISTRICT JUDGE