1

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   AEROPLATE CORPORATION,              CASE NO. CV F 06-1099 LJO SMS

10                    Plaintiff,    _____**SUMMARY JUDGMENT DECISION**
            vs.                         (Doc. 62.)

11
    ARCH INSURANCE COMPANY, et al.,
12
                    Defendant.
13   _____/

14                          **INTRODUCTION**

15        Defendant Arch Insurance Company ("Arch") seeks summary judgment that plaintiff Aeroplate

16   Corporation's ("Aeroplate's") intentional and negligent interference with prospective economic

17   advantage causes are barred under California's Anti-SLAPP[1] statute, California Code of Civil Procedure

18   section 425.16 ("section 425.16"), and that Aeroplate fails to establish essential elements of the claims.

19   Aeroplate responds that Arch does not meet its threshold burden to demonstrate that Arch's challenged

20   conduct is protected activity and that Aeroplate demonstrates probability of prevailing on its claims.

21   This Court considered Arch's summary judgment motion on the record[2] and VACATES the November

22   26, 2007 hearing, pursuant to Local Rule 78-230(h).  For the reasons discussed below, this Court

23   _____

        [1]        SLAPP is an acronym for strategic litigation against public participation.
24
        [2]        This Court carefully reviewed and considered all arguments, points and authorities, declarations,
25   depositions, exhibits, statements of undisputed facts and responses thereto, objections and other papers filed by the parties.
     Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did
26   not consider the argument, document, paper or objection.  This Court thoroughly reviewed and considered the evidence it
     deemed admissible, material and appropriate for summary judgment.
27
                 This Court further notes that Arch filed opening and reply points and authorities to exceed 25 and 15 pages
28   respectively to violate this Court's standing order.

                                              1

1  GRANTS Arch summary judgment on Aeroplate's intentional and negligent interference with

2  prospective economic advantage causes of action.

3  **BACKGROUND**

4  **General Indemnity Agreement**

5       Aeroplate is a California construction corporation.  Arch is a Missouri insurance company which

6  issues construction bid, performance and payment bonds.  Aeroplate with several individual indemnitors

7  executed in Arch's favor a May 12, 2004 General Indemnity Agreement which provides Arch "the right

8  to decline any Bond" requested by Aeroplate and including any "such Bond" requested after Arch has

9  executed a preliminary bond, such as a "bid or proposal bond."  The General Indemnity Agreement

10  further provides that Aeroplate acknowledges that Arch "makes no representations as to the acceptability

11  of any of its Bonds to any person, firm or entity under any contract" and that Aeroplate "shall have no

12  claim against [Arch] relating to the failure or refusal of any entity to accept any bond issued" by Arch.

13  **Aeroplate's Project Bid**

14       On April 26, 2005, the U.S. Property and Fiscal Officer for California ("USPFO") solicited bids

15  for a project known as "Repair/Construct Maintenance Hangar and Shops, Fresno Air National Guard

16  Service, Fresno" ("project").  Aeroplate was one of five project bidders and made a $6,486,020 base bid

17  with $818,000 spread over 15 additional options.  Aeroplate's bid was publicly opened on June 2, 2005

18  and appeared as the lowest.  Aeroplate's bid included a bid bond listing Arch as the bid guarantor.  Arch

19  had authorized a bid bond for a bid not to exceed $5.5 million.

20       Arch Executive Underwriter Richard Hallett ("Mr. Hallett") sent a June 7, 2005 e-mail to

21  Michael Thomas ("Mr. Thomas") and Brooke Lafrenz ("Ms. Lafrenz") of Willis Risk and Insurance

22  Services ("Willis"), Aeroplate's agent, to demand that Aeroplate immediately declare an error and

23  withdraw Aeroplate's bid.

24       Warrant Officer Mike Mitchell ("Mr. Mitchell") is a contract specialist with USPFO for the

25  California National Guard and during early June 2005, investigated whether Aeroplate was a responsible

26  bidder.  With his June 15, 2005 Memorandum of Record ("June 15 memorandum"), Mr. Mitchell

27  concluded that Aeroplate is "generally qualified and eligible to receive" the project award.  Mr.

28  Mitchell's June 17 and 20, 2005 e-mails to Mary Williams ("Ms. Williams"), Aeroplate's CEO,

2

1    expressed optimism to secure project funding but "[t]his isn't definite, that'll be when I get the funding

2    documents in my hands . . ."[3]

3                    **Investigation Into Aeroplate As A Responsible Bidder  –**

4                        **Arch's Communications With Mr. Mitchell**

5            Kenneth Huff ("Mr. Huff"), Arch's AVP of surety claims, left a voicemail for Mr. Mitchell that

6    there was a problem with Aeroplate's bid bond in that it was "invalid" and to request Mr. Mitchell to

7    telephone Mr. Huff or Arch Senior Surety Counsel Susan D. Neff ("Ms. Neff").  Ms. Neff was present

8    when her supervisor Mr. Huff left the voicemail and in her deposition, attributed Mr. Huff to have

9    "misspoke and he was leaving a quick message and he just said call us back about this invalid bid

10   bond."[4]

11           Ms. Neff claims that during a June 20, 2005 telephone call, Mr. Mitchell informed Ms. Neff of

12   his concerns regarding Aeroplate's responsibility as a bidder and whether Aeroplate would be able to

13   complete the project.  Ms. Neff attributes Mr. Mitchell to state that "the Project was approximately

14   double the size of the largest project Aeroplate had successfully completed to date" and that "Aeroplate's

15   current line of credit was in the low six figures."  According to Ms. Neff, Mr. Mitchell was concerned

16   "whether Aeroplate had enough credit to finance the Project" and inquired "whether Arch had reached

17   a final decision on whether to issue performance and payment bonds to Aeroplate."  Ms. Neff informed

18   Mr. Mitchell that Arch had requested Aeroplate to withdraw its bid and that Aeroplate knew its bid

19   exceeded its bid bond authority.  Ms. Neff further informed Mr. Mitchell that Arch had not reached a

20   final decision, and Mr. Mitchell agreed to furnish Ms. Neff a copy of the project bid abstract.      Ms.

21   Neff received Mr. Mitchell's June 20, 2005 e-mail with an attached copy of the project bid abstract

22

23           [3]      Although Aeroplate equates Mr. Mitchell's memorandum as his determination that Aeroplate was a
     responsible bidder, funding had not been awarded to cover Aeroplate's bid.  Mr. Mitchell testified in his deposition:
24
                   At that time, I discussed the finding that I made with . . . then Lieutenant Colonel Eric McDonald,
25             the contracting officer, and we discussed the situation and a decision was not made at that time to award
               Aeroplate because there was still a question of their bid bond and also because we had not received – the
26             monies that we had initially were not enough to cover Aeroplate's bid and we required additional funding
               from the National Guard Bureau.  So we were waiting for that, also.
27
             [4]      In his deposition, Mr. Mitchell notes that Mr. Huff and Ms. Neff instigated Arch's communications with
28   him.

                                                    3

including offerors' identities and a condensed break down of each offeror's bid.  Ms. Neff responded

later that day with the following e-mail:

> Mike,

> I received the bid abstract.  As I mentioned over the phone, I will give you a call either late Tuesday or sometime Wednesday to keep you updated on the Aeroplate bonding issue.

> Susan

Ms. Neff was concerned that: (1) Aeroplate had submitted a bid bond without Arch's authorization; and (2) USPFO would pursue Arch's bid bond if Aeroplate did not secure performance and payment bonds to leave Arch liable for approximately $700,000.  On June 22, 2005, Ms. Neff informed Mr. Mitchell by telephone that: (1) after evaluation of Aeroplate's financial condition, Arch would not issue payment and performance bonds to Aeroplate for the project; (2) Arch had requested Aeroplate to withdraw its bid; (3) Aeroplate's attorney attempted arrange alternative bonding; and (4) although Aeroplate may have submitted the bid bonds in good faith with Willis' approval, Arch had not approved the bid bonds.  Ms. Neff attributes Mr. Mitchell to state that the Fresno Air National Guard Service ("FANGS")[5] had received funding to award the project and that he would await contact from Aeroplate prior to awarding the project contract.  Mr. Mitchell did not feel assured that Arch would honor Aeroplate's bid bond based on Arch's communications that Arch had not authorized the bid amount.

Later on June 22, 2005, Ms. Neff received Mr. Mitchell's e-mail with a brief synopsis of the dispute between Aeroplate, Willis and Arch regarding Aeroplate's bid submission in an amount higher than Arch had agreed to bond.  Mr. Mitchell's e-mail noted that "for the record, I have created a summary of the whole situation.  I'd appreciate it if you would confirm or correct my notes."  Ms. Neff's June 23, 2005 e-mail responded: "I have made some revisions to your summary.  (See below).  Should you have any questions, please feel free to contact me."  Ms. Neff's e-mail included Mr. Mitchell's synopsis with revisions "I had made reflecting the facts as I understood them."  Ms. Neff characterizes her revisions as "a few corrections."  Mr. Mitchell's June 23, 2005 e-mail thanked Ms. Neff for

---

[5]  The parties use "FANGS" loosely to refer apparently to the entity with contracting authority.  Although the record is unclear, USPFO appears as the entity with contracting authority, and this Court will refer to USPFO as such.

4

1    "exactly" what he needed and further stated:

2         I don't know where we're going next. I'm writing up our options right now, with
         pros and cons for each. I don't know if we'll need any more "official" correspondence
3        or not, but I'll at least let you know how it comes out."

4        On June 29, 2005, Mr. Mitchell telephoned Ms. Neff to indicate that he had received negative

5    information from the Surety Association of America regarding another surety offered by Aeroplate to

6    provide bonds for the project given Arch's declination to do so. Mr. Mitchell further noted that he had

7    reached a decision regarding Aeroplate and his recommendation on awarding the contract to Aeroplate.

8        Mr. Mitchell prepared a June 29, 2005 Memorandum of Record ("June 29 memorandum") to

9    explain his redetermination that Aeroplate was not qualified for the project award:

10        a. Although we initially determined it appeared Aeroplate met the requirements
         for responsibility to be awarded the project, we had doubts at the time about their
11       financial position. But the assurances from the agents at Willis Risk and Insurance that
         they had examined Aeroplate's financial situation and would provide the performance
12       and payment bonds, helped assuage our doubts. After finding that the agents at Willis
         Risk and Insurance apparently misrepresented to us Aeroplate's financial situation and
13       their bonding capacity (based on the call from Arch), we decided we needed to re-
         examine Aeroplate's ability to successfully complete the contract.
14
         b. We believe that a company will require about $1-1.5 million in cash or credit
15       to start a job of this magnitude. My investigation shows Aeroplate doesn't have those
         resources, can't get those resources and cannot get a corporate surety to underwrite them
16       for an award of over $5.5 million. The Individual Surety they have indicated will
         underwrite them, appears to be under investigation for securities fraud in many different
17       states.

18        c. Based on the above, I have determined that Aeroplate Construction
         Corporation does not meet responsibility requirements . . .; therefore they are not
19       qualified to receive this award. I recommend they not be awarded this contract.

20                                  **Rejection Of Aeroplate's Bid**

21        With his June 29, 2005 letter to Aeroplate, California Army National Guard Lieutenant Colonel

22   Eric McDonald ("Lt. Col. McDonald") rejected Aeroplate's project bid as non-responsive based on

23   Aeroplate's invalid bid bond submission lacking Aeroplate's corporate seal. Lt. Col. McDonald also

24   explained:

25        Further, on June 23, 2005, we were notified by Arch Insurance Company, the
         surety company issuing the bond, that they "authorized the bid in the amount of $5.0
26       million, not to exceed $5.5 million inclusive." They stated repeatedly they declined the
         job at $7 million. As they did not authorize a bid bond for the amount of your bid
27       ($7,304,120.00), it is not clear to the government that the surety feels liable for the penal
         amount of the bond.

28

                                              5

> Because of the failure to properly execute the bond, and because it's unclear if Arch Insurance Company would honor the bond, we can not definitively determine [if] the government would receive the penal amount if the circumstances forced us to try to collect it.

In his deposition, Mr. Mitchell testified: "Because from what we'd been told, Arch had only approved the bid bond up to 5.5 million. Therefore, yes, that was part of our consideration because Aeroplate's bid was 7.3 million and clearly exceeded the limit that I was being told that Arch had set."

USPFO awarded the project to the second lowest bidder.

On July 8, 2005, Aeroplate filed a declaratory and injunctive relief action ("bid protest action") in the U.S. Court of Federal Claims ("Claims Court") to dispute USPFO's determination that Aeroplate's bid was non-responsive and that Aeroplate was not a responsible bidder. The Claims Court issued an August 5, 2005 decision to stay award of the project pending the Small Business Administration's ("SBA's") investigation into Aeroplate for issuance of a certificate of competency ("COC") to Aeroplate.

**SBA's Investigation Of Aeroplate**

SBA commercial market representative Hank Ramirez ("Mr. Ramirez") left a September 2, 2005 voicemail for Ms. Neff that he was investigating Aeroplate's bid bond issue for the project and that he wanted to know how Aeroplate knew it was not bondable up to $7 million and why Aeroplate submitted a $7 million bid. After Ms. Neff received Mr. Ramirez' voicemail, Mr. Huff instructed Ms. Neff not to return telephone calls from Mr. Ramirez or anyone else from SBA. During a September 6, 2005 telephone call, Ms. Neff advised Mr. Ramirez that she had been instructed to provide no information to SBA on threat of litigation by Aeroplate.

After Mr. Huff authorized Ms. Neff to contact SBA, Ms. Neff left a September 8, 2005 voicemail for Mr. Ramirez to confirm that SBA had necessary information for its investigation of the Aeroplate bid bond issue. During his September 9, 2005 telephone conversation, Mr. Ramirez informed Ms. Neff that an alternative surety which Aeroplate had proposed had been debarred and was currently under investigation. Ms. Neff also participated in a September 9, 2005 telephone conference call with Mr. Ramirez and Arch executive underwriter Mr. Hallett to discuss Aeroplate's bid bond issue and Claims Court action. After the conference call, Ms. Neff faxed to Mr. Ramirez her handwritten notes of June

6

21, 2005 meeting among herself and Aeroplate officers and counsel Mr. Bruckner.  On September 12, 2005, Ms. Neff faxed to Mr. Ramirez: (1) Arch's Account Summary Report (with financial information redacted) to show account and agent limits; (2) Mr. Hallett's May 26, 2005 e-mail to Mr. Thomas of Willis; (3) a June 9, 2005 e-mail of Aeroplate CEO Ms. Williams to Ms. Lafrenz of Willis with Ms. Lafrenz' handwritten comments addressed to Mr. Hallett; and (d) Mr. Thomas' June 9, 2005 e-mail to Mr. Hallett.

In her declaration, Ms. Neff sums up:

> At no time during any of my conversations or communications with any government personnel concerning this matter did I disclose any business or personal financial information about Aeroplate, or any of its officers, employees, or of any of the individual indemnitors under the general indemnity agreement.  My discussions and communications contained only general references to financial ability of Aeroplate to complete the subject construction project, which by the way were initially raised to me by Mike Mitchell.  And all of my communications with any government personnel or representative, including any and all general references to the financial ability of Aeroplate to complete the subject construction project, were made in the context of Arch Insurance Company's investigation and determination of whether to issue the final contract bonds for the subject construction project.

On January 27, 2006, the SBA issued a COC to Aeroplate.  The Claims Court issued its June 14, 2006 decision to direct USPFO to award the project to Aeroplate.

## Aeroplate's Claims

Aeroplate pursues against Arch a first cause of action for intentional interference with prospective economic advantage and a second cause of action for negligent interference with prospective economic advantage.  Aeroplate alleges that during June 20, 2005 to May 8-10, 2006, Arch intentionally interfered with the economic relationship between Aeroplate and USPFO in that Arch: (1) repeatedly misrepresented to USPFO that Aeroplate's bid bond was invalid and submitted without authority; and (2) advised USPFO that it would not issue performance and payment bonds to Aeroplate.  Aeroplate alleges that had Arch not interfered with the relationship between USPFO and Aeroplate, Aeroplate would have received the project award in June 2005.  Aeroplate further alleges that during August 5, 2006 to January 27, 2006, Arch made misrepresentations to SBA regarding Aeroplate's responsibility.  In addition, Aeroplate alleges that Arch's interference required Aeroplate to litigate the bid protest action.

Aeroplate claims damages exceeding $3 million, including additional performance costs of labor,

1    materials, equipment, overhead, site supervision, labor and delays, lost profits, and legal expenses to

2    prosecute the bid protest.

3          Arch seeks summary judgment on Aeroplate's intentional and negligent interference with

4    prospective economic advantage causes of action on grounds that section 425.16 provides a complete

5    defense and that Aeroplate lacks evidence to support elements of its causes of action.  Arch contends

6    that: (1) Arch neither made misrepresentations to USPFO or SBA nor damaged Aeroplate; and (2) all

7    of Arch's communications were truthful and in furtherance of Arch's rights under the General Indemnity

8    Agreement, which gave Arch "the unfettered right to decide whether to issue bonds."  Aeroplate opposes

9    summary judgment on grounds that Arch's actions were in pursuit of its "business interests" to preclude

10   section 425.16 protection and that Aeroplate demonstrates probability to prevail on its claims.

11   **DISCUSSION**

12   **Summary Judgment Standards**

13         F.R.Civ.P. 56(b) permits a party against whom a claim is asserted to seek "summary judgment

14   in the party's favor upon all or any part thereof."  Summary judgment is appropriate when there exists

15   no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

16   F.R.Civ.P. 56(e); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348,

17   1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

18   The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see

19   whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348;

20   *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

21         On summary judgment, a court must decide whether there is a "genuine issue as to any material

22   fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(c); *Covey v.*

23   *Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398

24   U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct.

25   486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).

26   The evidence of the party opposing summary judgment is to be believed and all reasonable inferences

27   that may be drawn from the facts before the court must be drawn in favor of the opposing party.

28   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587,

106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting

1   *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)).  "The mere

2   existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*,

3   477 U.S. at 252, 106 S.Ct. 2505.

4           Under F.R.Civ.P. 56(c), a summary judgment motion, interlocutory in character, may be rendered

5   on the issue of liability alone.  "In cases that involve . . . multiple causes of action, summary judgment

6   may be proper as to some causes of action but not as to others, or as to some issues but not as to others,

7   or as to some parties, but not as to others."  *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see*

8   *also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue*

9   *Service*, 878 F.2d 306, 309 (9th Cir. 1989).  A court "may grant summary adjudication as to specific

10  issues if it will narrow the issues for trial."  *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055

11  (S.D. Cal. 1977).

12  _____As discussed below, Aeroplate has failed to produce evidence to satisfy elements of its

13  intentional and negligent interference with prospective economic advantage causes of action to entitle

14  Arch to summary judgment on those claims.

15                                        **California's Anti-SLAPP Statute**

16          Section 425.16 is California's anti-SLAPP statute and authorizes a "special motion to strike"

17  litigation designed to chill free speech:

18          (b)(1)   A cause of action against a person arising from any act of that person in
                 furtherance of the person's right of petition or free speech under the United States or
19               California Constitution in connection with a public issue shall be subject to a special
                 motion to strike, unless the court determines that the plaintiff has established that there
20               is a probability that the plaintiff will prevail on the claim.

21  An act in furtherance of a person's right of petition or free speech includes "any written or oral statement

22  or writing made": (1) "before a legislative, executive, or judicial proceeding, or any other official

23  proceeding authorized by law" (Cal. Code Civ. Proc., § 425.16(e)(1); or (2) "in connection with an issue

24  under consideration or review by a legislative, executive, or judicial body, or any other official

25  proceeding authorized by law" (Cal. Code Civ. Proc., § 425.16(e)(2)).

26          Section 425.16 is to be construed liberally.  Cal. Code Civ. Proc., § 425.16(a); *Kectchum v.*

27  *Moses*, 24 Cal.4th 1122, 1130, 104 Cal.Rptr.2d 337 (2001).

28  / / /

                                                    10

1                               **Section 425.16's Application In Federal Courts**

2          The Ninth Circuit Court of Appeals has determined that section 425.16 applies in federal courts

3 in the absence of "direct collision" between California's statutory scheme and F.R.Civ.P. 8, 12 and 56.

4 *United States ex rel. Newsham v. Lockheed Missles & Space Company, Inc.*, 190 F.3d 963, 972 (9th Cir.

5 1999).  The "Anti-SLAPP statute and the Federal Rules do, in some respects, serve similar purposes,

6 namely the expeditious weeding out of meritless claims before trial . . . . [T]here is no indication that

7 Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at

8 weeding out meritless claims." *Newsham*, 190 F.3d at 972.  "Although Rules 12 and 56 allow a litigant

9 to test the opponent's claims before trial, California's 'special motion to strike' adds an additional,

10 unique weapon to the arsenal, a weapon whose sting is enhanced by a[n] entitlement to fees and costs."

11 *Newsham*, 190 F.3d at 973.

12          A section 425.16 special motion to strike may be based on a defect in a complaint, including

13 legal deficiencies addressable on a motion to dismiss under F.R.Civ.P. 12(b)(6), or a failure to support

14 a stated claim with evidence, analogous to a F.R.Civ.P. 56 summary judgment motion.  *Condit v.*

15 *National Enquirer, Inc.,* 248 F.Supp.2d 945, 952 (E.D.Cal. 2002).  As a fellow district court has

16 explained:

17              § 425.16 applies in federal court. However, it cannot be used in a manner that conflicts
with the Federal Rules. This results in the following outcome: If a defendant makes a
18              special motion to strike based on alleged deficiencies in the plaintiff's complaint, the
motion must be treated in the same manner as a motion under Rule 12(b)(6) except that
19              the attorney's fee provision of § 425.16(c) applies. If a defendant makes a special motion
to strike based on the plaintiff's alleged failure of proof, the motion must be treated in the
20              same manner as a motion under Rule 56 except that again the attorney's fees provision
of § 425.16(c) applies.

21

22 *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 983 (C.D.Cal.1999).

23          Although Arch styles its motion for summary judgment, Arch in its opening points and

24 authorities presents it as a F.R.Civ.P. 12(b)(6) motion or alternative F.R.Civ.P. 56 summary judgment

25 motion.  Since a F.R.Civ.P. 12(b)(6) motion is untimely,[6] this Court considers Arch's papers as seeking

26 ────────────────────────

27          [6]      The Ninth Circuit allows a F.R.Civ.P. 12(b) motion "any time before the responsive pleading is filed."
28 *Aetna Life Ins. Co. v. Alla Medical Servs., Inc.*, 855 F.2d 1470, 1474 (9th Cir. 1988).  Arch filed its answer or responsive
pleading on November 17, 2006, well before its summary judgment motion.

1    summary judgment based on Aeroplate's failure to support its causes of action with evidence.

2                              **Section 425.16's Burden Shifting**

3         Section 425.16(b)(1) provides a two-step burden shifting process:

4         First, the court decides whether the defendant has made a threshold showing that the
          challenged cause of action is one arising from protected activity. The moving defendant's
5         burden is to demonstrate that the act or acts of which the plaintiff complains were taken
          "in furtherance of the [defendant]'s right of petition or free speech under the United
6         States or California Constitution in connection with a public issue," as defined in the
          statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then
7         determines whether the plaintiff has demonstrated a probability of prevailing on the
          claim. Under section 425.16, subdivision (b)(2), the trial court in making these
8         determinations considers "the pleadings, and supporting and opposing affidavits stating
          the facts upon which the liability or defense is based."

9

10   *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67, 124 Cal.Rptr.2d 507 (2002).

11        As to the threshold protected activity burden, "the critical consideration is whether the cause of

12   action is based on the defendant's protected free speech or petitioning activity." *Navellier v. Sletten,* 29

13   Cal.4th 82, 89,124 Cal.Rptr.2d 530 (2002); *See Kajima Engineering and Constr., Inc. v. City of Los*

14   *Angeles*, 95 Cal.App.4th 921, 928, 116 Cal.Rptr.2d 187, 192 (2002) (moving defendant's burden is show

15   that the challenged action arises from protected activity). "[A] defendant that satisfies its initial burden

16   of demonstrating the targeted action is one arising from protected activity faces no additional

17   requirement of proving the plaintiff's subjective intent. . . Nor need a moving defendant demonstrate

18   that the action actually has had a chilling effect on the exercise of such rights." *Navellier,* 29 Cal.4th

19   at 88,124 Cal.Rptr.2d 530 (citation omitted.)

20                      **Arch's Threshold Protected Activity Burden**

21                          ***Arch's Communications With USPFO***

22        Arch contends that its communications with USPFO, in particular with Mr. Mitchell, fall under

23   section 425.15(e)(1) and (2) as "before" or "in connection with an issue under consideration or review

24   by [an] official proceeding authorized by law." *See Braun v. Chronicle Publishing Co.*, 52 Cal.App. 4th

25   1036, 1048-1049, 61 Cal.Rptr.2d 58 (1997) ("investigative audit, conducted by State Auditor, is an

26   authorized official proceeding" for section 425.16 purposes and such investigation "is an authorized,

27   public proceeding because it is government-sponsored and provided for by statute.") Arch explains that

28   as a USPFO warrant officer, Mr. Mitchell investigated whether Aeroplate was a responsible bidder to

                                              12

render his investigation an official proceeding, government sponsored and authorized by statute.

To support such argument, Arch points to several federal acquisitions regulations addressing responsible prospective federal contractors.  48 C.F.R. § 9.103(b) provides:

> No purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility. In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility. If the prospective contractor is a small business concern, the contracting officer shall comply with subpart 19.6, Certificates of Competency and Determinations of Responsibility. (If Section 8(a) of the Small Business Act (15 U.S.C. 637) applies, see subpart 19.8.)

48 C.F.R. § 9.105-2(a) provides:

> (1) The contracting officer's signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract. When an offer on which an award would otherwise be made is rejected because the prospective contractor is found to be nonresponsible, the contracting officer shall make, sign, and place in the contract file a determination of nonresponsibility, which shall state the basis for the determination.

> (2) If the contracting officer determines and documents that a responsive small business lacks certain elements of responsibility, the contracting officer shall comply with the procedures in subpart 19.6. When a certificate of competency is issued for a small business concern (see subpart 19.6), the contracting officer may accept the factors covered by the certificate without further inquiry.

And, 48 C.F.R. § 19.602-1(a) addresses SBA referral requirements:

> (c) The referral shall include--

> (1) A notice that a small business concern has been determined to be nonresponsible, specifying the elements of responsibility the contracting officer found lacking; and

> (2) If applicable, a copy of the following:

> . . .

> (vi) Any other justification and documentation used to arrive at the nonresponsibility determination.

Based on the regulations, Arch contends that Mr. Mitchell needed to: (1) determine whether Aeroplate was responsible; and (2) support a non-responsibility determination with specified elements and other justification and documentation.  As such, Arch concludes that the "statutory nature" of Mr. Mitchell's investigation and determination qualify as an official proceeding authorized by law.

1    Turning to the "substance" of its communications, Arch argues that its communications with Mr.

2    Mitchell were either before or made in connection with Mr. Mitchell's determination whether Aeroplate

3    lacked elements of responsibility under 48 C.F.R. § 19.602-1(a) and including "capability, competency,

4    capacity, credit, [and] integrity." Arch points out that Mr. Mitchell and Ms. Neff discussed Aeroplate's

5    largest project (capability), income and loan amounts (capacity), line of credit and its sufficiency for the

6    project (credit), and performance history and bid deficiencies (competency). Arch notes Mr. Mitchell's

7    concern in a June 20, 2005 e-mail to Ms. Neff that "Aeroplate may have seriously underbid."

8    Aeroplate responds that prior to Arch's initial communication, Mr. Mitchell "had already made

9    his responsibility determination of Aeroplate." Aeroplate points to Mr. Mitchell's June 15 memorandum

10   to outline his process to determine that Aeroplate "is generally qualified and eligible to receive this

11   award." As such, Aeroplate concludes that "Arch's conduct did not occur before or in connection with

12   an official proceeding."

13   Aeroplate contends that Arch fails to meet its threshold protected activity burden because Arch's

14   contacts with USPFO were "in furtherance of Arch's business interests," not Arch's rights to petition

15   or free speech. Aeroplate argues that section 425.16 does not protect communications in connection

16   with bidding and contracting practices on public works projects. *See Kajima Engineering,* 95

17   Cal.App.4th at 929, 116 Cal.Rptr.2d at 193 (city's fraud and related claims against engineering firm

18   arose from engineering firm's "bidding and contracting practices, not from acts in furtherance of its right

19   of petition or free speech"). Aeroplate accuses Arch of "interfering with the bidding process as a

20   business practice."

21   Aeroplate also characterizes Arch's communications with USPFO as "business transaction"

22   statements which are unrelated to an official proceeding and unprotected by section 425.16. Aeroplate

23   points to *Blackburn v. Brady*, 116 Cal.App.4th 670, 10 Cal.Rptr.3d 696 (2004), which addressed a

24   bidders alleged fraudulent bid and statements at a sheriff's real property auction. The California Court

25   of Appeal determined that the "ministerial event of a Sheriff's sale or auction" did not equate to an

26   official proceeding in that "it concerns a business dealing or transaction somewhat analogous to the

27   unprotected activity of bidding on public contracts in *Kajima* . . . and not the exercise of protected

28   activity under section 425.16." *Blackburn*, 116 Cal.App.4th at 677, 10 Cal.Rptr.3d at 701. "[S]ection

14

425.16 does not accord anti-SLAPP protection to suits arising from any act having any connection, however remote, with an official proceeding.  The statements or writings in question must occur in connection with an issue under consideration or review in the proceeding." *Blackburn*, 116 Cal.App.4th at 677, 10 Cal.Rptr.3d at 701 (internal quotes omitted).[7]

Aeroplate has raised factual and legal issues whether Arch's communications with USPFO were before or in connection with an official proceeding.  A key point is that with his June 15 memorandum and prior to initial Arch contact, Mr. Mitchell determined that Aeroplate "is generally qualified and eligible to receive this award."  Mr. Mitchell had specifically determined that Aeroplate had "adequate financial resources, or the ability to obtain them," "is able to meet the contract completion period," has a "satisfactory" performance record, history of integrity and business ethics, necessary organization, experience, accounting and operation controls, technical skills, and construction equipment and facilities.  After Arch's contact, Mr. Mitchell began to backtrack, and a reasonable inference from the evidence is that Arch influenced Mr. Mitchell to protect Arch's business interests, that is, avoidance of bond payments to USPFO.  The fact that federal regulations authorized Mr. Mitchell's responsibility determination does not transmute Arch's business-motivated communications into matters subject to an official proceeding.  Moreover, Arch's communications with USPFO are not subject to an official proceeding because litigation may result from USPFO decisions.  Litigation is available to any unsuccessful bidder on a federal project, and that in itself, does not cloak a surety's communications with a government entity with section 425.16 protection.  Arch fails to meet its threshold burden that its USPFO communications arose from a protected activity.

### Arch's Communications With SBA

Arch further argues that its SBA communications fall under section 425.16(e)(1) and (2)  as "before" or "in connection with an issue under consideration or review by [an] official proceeding authorized by law" because SBA's determination to issue Aeroplate a COC is "government-sponsored

---

[7]        Aeroplate also argues that Arch's USPFO communications are not subject to section 425.16 protection in their absence of dissemination in a public forum, widespread public interest or ongoing controversy.  Arch correctly notes in its reply papers that Aeroplate's argument addresses section 425.16(e)(3) and (4), not at issue here.  Arch relies on section 425.16(e)(1) and (2), and Aeroplate points to no pertinent authority to require dissemination in a public forum, widespread public interest or ongoing controversy.

and provided for by statute." Arch notes that the SBA is empowered:

> To certify to Government procurement officers . . . with respect to all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern . . . to receive and perform a specific Government contract. A Government procurement officer . . . may not, for any reason specified in the preceding sentence preclude any small business concern . . . from being awarded such contract without referring the matter for a final disposition to the [Small Business] Administration.

15 U.S.C. § 637(b)(7).

Arch argues that its communications with SBA's Mr. Ramirez assisted his COC determination and points out that its SBA communications arose after Aeroplate's referral to SBA for final responsibility determination.

Aeroplate focuses its opposition on Arch's communications with USPFO and appears to blend its points regarding communications between Arch and USPFO and Arch and SBA.

The evidence reveals that the Claims Court directed SBA's investigation to issue a COC to Aeroplate. SBA's Mr. Ramirez initiated contact with Arch to further SBA's investigation. Aeroplate fails to challenge meaningfully that Arch's SBA contacts were before or in connection with an official proceeding. The SBA was authorized by statute and the Claims Court to investigate a COC for Aeroplate. Arch's communications with SBA arose after the USPFO decided not to award Aeroplate the project. The evidence fails to substantiate that Arch's SBA communications furthered Arch's business interests in that Arch responded to SBA's inquiries after USPFO decided not to award the project to Aeroplate. Construed liberally, the evidence reveals that Arch's SBA communications were in connection with an issue (a COC for Aeroplate) under consideration or review by an executive body (SBA) or judicial body (Claims Court) and at a minimum, a proceeding authorized by law. In the absence of meaningful opposition, Arch meets its threshold burden that its SBA communications arose from a protected activity.

**Merits Of Aeroplate's Claims**

This Court's attention turns the merits of Aeroplate's intentional and negligent infliction of prospective economic advantage claims. Given that Arch proceeds with a summary judgment motion, this Court will apply F.R.Civ.P. 56 standards outlined above, not section 425.16 probability of prevailing

/ / /

16

1  standards noted by Arch.  *See Rogers*, 57 F.Supp.2d at 983.[8]

2                    ***Intentional Interference With Prospective Economic Advantage***

3          The parties generally agree on the elements to establish intentional interference with prospective

4  economic advantage:

5          1.     An economic relationship between the plaintiff and some third party, with the probability

6                 of future economic benefit to the plaintiff;

7          2.     Defendant's knowledge of the relationship;

8          3.     Intentional acts on the part of the defendant designed to disrupt the relationship;

9          4.     Actual disruption of the relationship; and

10         5.     Economic harm to the plaintiff proximately caused by the acts of the defendant.

11  *Youst v. Longo*, 43 Cal.3d 64, 71, n. 6, 233 Cal.Rptr. 294 (1987).

12         As Arch notes, in *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392-393, 45

13  Cal.Rptr.2d 426 (1995), the California Supreme Court clarified that the third element require proof "that

14  the defendant's interference was wrongful 'by some measure beyond the fact of interference itself.'"

15  "*Della Penna* merely clarified the plaintiff's burden as to the third element, stating that to meet this

16  element, a plaintiff must plead and prove that the defendant's acts are wrongful apart from the

17  interference itself."   *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1154, 131

18  Cal.Rptr.2d 29 (2003).

19         Focusing on the intentional act element, Arch argues that its contacts with USPFO or SBA were

20  "truthful statements to interested parties about Arch's business practice, including Arch's refusal to issue

21  payment and performance bonds."  Arch characterizes its communications as "true and correct opinions"

22  as to Aeroplate's "responsibility and the unauthorized bid bond submitted."   Arch contends that the

23  essence of Aeroplate's claims is an attack on exercise of Arch's contractual right to refuse to issue

24  payment and performance bonds and which does not support an intentional interference with prospective

25  economic advantage claim.   Arch points to a provision in its General Indemnity Agreement with

26  _____

27          [8]       Even in the section 425.16 context, this Court need not address probability of Aeroplate prevailing on its
28  claims regarding Arch's USPFO communications because this Court finds that Arch failed to meet its threshold burden that
    such communications arose from a protected activity.

                                                         17

1   Aeroplate:

2       SURETY'S RIGHT TO DECLINE BONDS – Surety has the right to decline to execute
        any Bond requested by the Principal or Indemnitors, including any such Bond requested
3       after Surety has executed a preliminary bond including, but not limited to, a bid or
        proposal bond, or a Consent of Surety to the issuance of Bonds.
4

5       Aeroplate responds that Arch made misrepresentations to USPFO that Aeroplate's bid bond was

6   invalid although Arch knew that agent Willis authorized submission of the bid bond.  Aeroplate

7   attributes Arch to state that Aeroplate "knowingly submitted the bid bond without authorization."

8   Aeroplate accuses Arch of attempting to avoid payment to USPFO if Aeroplate was awarded the project,

9   did not secure payment and performance bonds, and defaulted to USPFO.

10      Construed most favorably to Aeroplate, the evidence reveals no misrepresentations by Arch to

11  USPFO.  Arch accurately communicated that Aeroplate's bid exceeded Arch's bid bond.  Mr. Hallett

12  of Arch sent Willis, Aeroplate's agent, a June 7, 2005 e-mail to implore Aeroplate to rectify the

13  excessive bid.  By proceeding with its bid, Aeroplate placed Arch in a precarious position of facing

14  potential exposure for on a bid bond which was less than Aeroplate's bid.  Arch provided Mr. Mitchell

15  with available information and information which he requested and protected and advanced rights under

16  the General Indemnity Agreement.  After further evaluation, USPFO decided not to award the project

17  to Aeroplate.  Aeroplate fails to raise factual issues that Arch's communications with USPFO were

18  wrongful beyond the fact of interference itself.  Arch demonstrates an absence of evidence to support

19  the intentional acts element of Aeroplate's intentional interference with prospective economic advantage

20  cause of action.

21      Turning to the actual disruption of relationship and causation elements, Arch argues that since

22  Aeroplate was ultimately awarded the project, Aeroplate neither has been denied the economic

23  advantage it sought nor has been damaged.  Aeroplate responds that as of June 15, 2005, USPFO

24  determined that Aeroplate was qualified for the project but after Arch's communications, USPFO

25  rejected Aeroplate's bid to compel Aeroplate to pursue the bid protest action and to incur increased costs

26  to perform the project award.

27      As a matter of law, a threshold requirement for intentional and negligent interference with

28  prospective economic advantage is "proof that it is reasonably *probable* that the lost economic advantage

18

1  would have been realized but for the defendant's interference." *Youst v. Longo*, 43 Cal.3d 64, 71, 233

2  Cal.Rptr. 294, 298 (1987).

3       The evidence raises a mitigating factor on the issue Aeroplate's realization of economic

4  advantage.  Viewing the evidence most favorably to Aeroplate, Aeroplate appears as a qualified lowest

5  bidder as of June 15, 2005.  However, at that time, USPFO awaited additional funding to cover

6  Aeroplate's bid.  That is, Aeroplate's economic advantage could not have been fully realized as of June

7  15, 2005.  Mr. Mitchell's June 17 and 20, 2005 e-mails to Aeroplate CEO Ms. Williams cautioned that

8  the project award was indefinite pending "the funding documents in my hands."  The absence of total

9  funding in place weakens the actual disruption and damages elements for Aeroplate to further

10  demonstrate the absence of evidence to support Aeroplate's claims.  Arch has met its burden to negate

11  an essential element of Aeroplate's intentional interference with prospective economic advantage cause

12  of action.

13            ***Negligent Interference With Prospective Economic Advantage***

14       The elements of negligent interference with prospective economic advantage are:

15      1.    An economic relationship between plaintiff and a third party with a reasonably probable

16          future economic benefit or advantage to plaintiff;

17      2.    Defendant knew of the relationship and was aware or should have been aware that if it

18          did not act with due care its actions would interfere with the relationship to cause

19          plaintiff to lose in whole or in part the probable future economic benefit or advantage;

20      3.    Defendant was negligent; and

21      4.    Such negligence caused plaintiff damage in that the relationship was interfered with or

22          disrupted and plaintiff lost in whole or in part the economic benefits or advantage

23          reasonably expected from the relationship.

24  *No. Amer. Chemical Co. v. Superior Court*, 59 Cal.App.4th 764, 786, 69 Cal.Rptr.2d 466 (1997).

25       "The tort of *negligent* interference with economic relationship arises only when the defendant

26  owes the plaintiff a duty of care." *Stolz v. Wong Communications Limited Partnership*, 25 Cal.App.4th

27  1811, 1825, 31 Cal.Rptr.2d 229 (1994) (italics in original).

28       Arch contends that since its alleged wrongful conduct was an exercise of contractual rights, it

1   owed Aeroplate no duty of care to support Aeroplate's negligent interference with prospective economic

2   advantage cause of action.   Arch argues that its interference with Aeroplate's business is limited to

3   declining to issue bonds, which was Arch's option and not "independently wrongful conduct." Aeroplate

4   responds that Arch knew or should have known that Arch's communications to USPFO would cause

5   USPFO to re-determine Aeroplate's qualifications and that Arch was negligent when it made false

6   statements and misrepresentations.

7       Aeroplate fails to dispute meaningfully that Arch's alleged wrongs were an exercise of its

8   contractual rights or that Arch owed a duty of care to Aeroplate.  As noted above, the evidence reveals

9   no misrepresentations or similar misconduct of Arch to interfere with the relationship between USPFO

10  and Aeroplate.  There is an absence of evidence that Arch owed Aeroplate a duty of care under the

11  circumstances where Aeroplate submitted a bid which exceeded the amount of Arch's bid bond.

12  Aeroplate's broadsweeping statements without sufficient factual or legal support fail to substantiate

13  Aeroplate's negligent interference with prospective economic advantage cause of action and to avoid

14  summary judgment.

15                    **CONCLUSION AND ORDER**

16      For the reasons discussed above, this Court GRANTS Arch summary judgment on Aeroplate's

17  intentional and negligent interference with prospective economic advantage causes of action.  Since

18  Aeroplate pursues a pending motion to amend its complaint to add claims, this Court will not enter

19  judgment at this time.  This Court does not grant Arch section 425.16 relief in that it grants Arch

20  F.R.Civ.P. 56 relief in the absence of sufficient evidence to support Aeroplate's intentional and negligent

21  interference with prospective economic advantage causes of action.  As such, section 425.16(c) relief

22  is unavailable to Arch.

23      IT IS SO ORDERED.

24  **Dated:    November 20, 2007**              **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE

25

26

27

28